## In re MEDINA QUARRY CO.

### (District Court, W. D. New York. November 2, 1910.)

### No. 2,035.

1. BANKRUPTCY (§ 482*)—FEES OF ATTORNEYS—SERVICES IN RECOVERING PROPERTY.

Attorneys for unsecured creditors of a bankrupt corporation, who prior to the election of a trustee effectively conducted examinations of the bankrupt's officers, with a result beneficial to all general creditors, by enabling the trustee later to recover property fraudulently transferred, are entitled to an allowance of fees for their services, under Bankr. Act July 1, 1898, c. 541, § 64b (2), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), as amended by Act Feb. 5, 1903, c. 487, § 14, 32 Stat. 800 (U. S. Comp. St. Supp. 1909, p. 1315), as a part of the "reasonable expenses of such recovery"; but they cannot be allowed fees from the estate for services rendered after the trustee was appointed and engaged other counsel.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 894–896; Dec. Dig. § 482.*]

2. BANKRUPTCY (§ 482*)—FEES OF ATTORNEYS—ATTORNEYS FOR PETITIONING CREDITORS.

Attorneys for petitioning creditors in an involuntary bankruptcy proceeding are not entitled to an allowance of fees for their services from the estate, where such creditors assisted the bankrupt in a fraudulent transfer of property and the attorneys subsequently represented parties seeking to establish invalid claims.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 482.*]

In the matter of the Medina Quarry Company, bankrupt. On application for allowance of fees to attorneys and others.

See, also, 179 Fed. 929.

Wilber E. Houpt and John J. Ryan, for unsecured creditors.

Lincoln A. Groat, for unsecured creditors and bondholders.

Herbert T. Reed, for certain bondholders.

William W. Storrs, for trustee.

Martin Conboy, for petitioning creditors.

HAZEL, District Judge. The entire controversy, which was prolonged and difficult, arose from the wrongful acts of the bankrupt consisting of leasing or transferring its property to its successor, the Orleans County Quarry Company. From the outset of the bankruptcy proceeding the unsecured creditors vigorously contended before the referee in bankruptcy that the lease and bill of sale were made by the bankrupt with intent to hinder and delay creditors. There was a factional contest between the unsecured creditors, attacking the lease and bill of sale, and the petitioning and other creditors, who were in sympathy with the bankrupt company and its successor, the Orleans County Quarry Company. The trustee was not selected until about eight months after the petition in bankruptcy was filed, and counsel for the trustee was employed four months later to conduct the litiga-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion to have the lease declared fraudulent as to creditors. Before such employment, however, objections were made before the referee by the petitioning attorneys for unsecured creditors to the allowance of nonprovable claims against the bankrupt estate amounting to upwards of $100,000, and much argument had thereon. In a number of instances the objections prevailed. For instance, the claims of the Orleans County Quarry Company under the lease and bill of sale amounting to $68,755.13, and of Kessler & Co. on its chattel mortgage to secure a loan to the bankrupt of $60,000 were disallowed, the latter as a prior lien. In re Medina Quarry Co., 179 Fed. 929.

The record shows that prior to the employment of counsel by the trustee, Messrs. Houpt & Ryan, petitioning attorneys herein, conducted an examination in New York City of the bankrupt company, its officers and others, with the result that the referee refused to permit certain large creditors to participate in the election of a trustee, and facts and circumstances were adduced which I am inclined to think became the basis for the attack upon the lease and bill of sale as fraudulent and void. At all events, such investigation and examination, together with the objections to the provableness of the claims, indirectly led to the ascertainment of the facts upon which the special master decided that Kessler & Co.'s chattel mortgage was not entitled to priority of payment. The evident intention of the bankrupt to conceal its property, or to wrongfully insist that the transfer thereof was in good faith, was earnestly and aggressively opposed by Messrs. Houpt, Ryan, and Groat. The oral examinations, as has been mentioned, were zealously conducted by them for a period of several days, and unquestionably were important in the early stages of the bankruptcy proceeding. They acted promptly, at a time when a complete consummation of the fraud was preventable, and when delay would have been prejudicial to the general creditors.

Courts of bankruptcy are slow to make independent allowances out of the bankrupt estate to attorneys for creditors in cases where a trustee has retained diligent counsel to prosecute the litigation against the bankrupt. In the present case, however, valuable services were performed by Messrs. Houpt, Ryan, and Groat, prior to the appointment of the trustee and counsel for trustee, which inured to the benefit of all the general creditors, and tended to recover property which had been fraudulently transferred. In fact, they performed the legal services usually performed by attorneys for the petitioning creditors, and for which allowances are authorized by the bankrupt act. To now hold that they must look exclusively to their clients for compensation for their services would not, I think, be in harmony with the spirit of the bankrupt act (Act July 1, 1898, c. 541, § 64b (2), 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 14, 32 Stat. 800 [U. S. Comp. St. Supp. 1909, p. 1315]), by which it is substantially provided that where property of the bankrupt has been transferred or concealed, either before or after the filing of the petition, and shall have been recovered for the benefit of the bankrupt estate, the reasonable expenses for such recovery shall be entitled to priority of payment.

Although, after the employment of counsel by the trustee, further services were performed in the litigation by the petitioning attorneys, and aid given such counsel, no allowance out of the bankrupt estate can be made therefor. Such subsequent services must be regarded as having been rendered in the interest of their respective clients. The trustee did not accept of their services after he employed counsel, a counsel who was entirely disinterested and competent to recover the assets and continue the necessary legal steps to compel the bankrupt to make full disclosure of its property. Indeed, the affidavits of the trustee show that it was fairly understood that his attorney would alone be responsible for the conduct of the future proceedings. The mere fact that the petitioning attorneys attended the trial, or assisted before the referee, and procured the attendance of witnesses touching the commingling of stone, and bearing upon the validity of the Kessler chattel mortgage, does not justify an independent allowance on that ground. Nor can an allowance be made for attending sales, or running up the property, or procuring persons to bid thereon. The claim that the property would have been sacrificed, had it not been for the activity of the petitioning attorneys in securing bidders, is insufficient to justify an allowance for such services out of the bankrupt estate. In re J. W. Harrison Mercantile Co. (D. C.) 95 Fed. 123.

The trustee is authorized to pay a counsel fee additional to the amount herein allowed to counsel employed by him, said sum to be paid as follows: To Wilbert E. Houpt and John J. Ryan, each, $1,500, and their expenses for attendance at the examinations in New York City, and to Lincoln A. Groat $750. The allowance to Mr. Groat is for drawing the papers for the examination of the bankrupt, and for the appointment of receiver, and arguments and services on such application. He did not attend the examinations in New York City. The petition of Herbert T. Reed is disallowed, on the ground that the services performed by him related more particularly to the procurement of witnesses to show the commingling of properties in the Kessler Company chattel mortgage. His discovery in that relation was of great importance, and probably was controlling in the determination of the invalidity of the chattel mortgage as a prior lien; but his compensation must come from his clients and not from the bankrupt estate.

The request for an allowance to the attorney for the petitioning creditors is disallowed, save as to the filing fee, on the ground that the petitioning creditors were in sympathy with the bankrupt and assisted in the transfer of its property to the Orleans County Quarry Company; and, moreover, such attorneys subsequently represented creditors who had received preferential payments, and who were seeking to establish invalid claims against the bankrupt estate. The request of W. W. Storrs, counsel for trustee, for an allowance of $8,-163.54, for services performed and expenses incurred to September 6, 1910, in view of the magnitude of the services performed by him, is reasonable and just, and it was so conceded on all sides at the hearing, and such amount is therefore allowed.

The referee, G. D. Judson, claims to be entitled to receive out of the bankrupt estate as fees, commissions, and expenses the sum of $3,674.13. His disbursements were $632.61. He has already been paid $1,500, and I think, considering the importance of the questions submitted to him at the early stages of the proceeding, that an additional sum of $1,000 would not be unreasonable. It appears that Charles G. Signor performed legal services in drawing papers, notices, and orders, looking up descriptions of property, etc., at the request of the trustee, prior to the employment of Mr. Storrs. I allow in full payment for such services the sum of $250; to William W. Campbell, attorney for the bankrupt, the sum of $150, and his disbursements, amounting to $18.03; to John G. Boston, attorney for the Trust Company of America, the sum of $250, in full payment for his services, such sum to be paid out of the funds realized from the sale of the real property.

The order carrying into effect these directions may provide for the allowances to the trustee and for apportioning such expenses and allowances to the different funds in the hands of the trustee.

So ordered.